UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ZAMBOROSKI,

                Petitioner,                      CIVIL ACTION NO. 04 CV 71430 DT

        v.                          DISTRICT JUDGE VICTORIA A. ROBERTS

TIM LUOMA, Warden               MAGISTRATE JUDGE VIRGINIA M. MORGAN

                Respondent.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

**<u>I. Introduction</u>**

Petitioner David Zamboroski was convicted by a jury in the Circuit Court for the County of Montmorency, State of Michigan, of first-degree murder, M.C.L. § 750.316, and was sentenced to life imprisonment. The Michigan Court of Appeals affirmed petitioner's conviction and sentence. <u>People v. Zamboroski</u>, 2002 WL 3157706 (Mich.App.). The Michigan Supreme Court denied petitioner's application for leave to appeal. <u>People v. Zamboroski</u>, 469 Mich. 855, 666 N.W.2d 666 (Mich. July 17, 2003)(Table, No. 123300). Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court referred the matter to this court for Report and Recommendation. For the reasons stated below, the court recommends that petitioner's application for a writ of habeas corpus be denied.

**II.  Factual Background**

On May 15, 1999, at 7:30 in the evening, ten-year-old Steele Lindbloom placed a 911 call to the Montmorency County Sheriff's Department, stating that his mother, Susan Lindbloom, was lying unconscious in their Atlanta, Michigan home.  Upon arrival, the emergency medical service personnel found Lindbloom lying on her bedroom floor, conscious, but unable to speak.  Her gums were bleeding and she had become incontinent.  On the way to the hospital, Lindbloom lost consciousness, stopped breathing intermittently, and went into cardiac arrest.  She died at the hospital shortly before midnight.  Dr. Stephen Cohle, a forensic pathologist, performed an autopsy on Lindbloom on May 17, 1999.  Dr. Cohle concluded that the cause of death was acute cyanide poisoning and that Lindbloom was the victim of a homicide.

Through an investigation conducted by the Montmorency County Sheriff's Department and the Michigan State Police, petitioner and John Klecha were identified as suspects in the murder of Lindbloom.  On May 22, 1999, petitioner was arrested at his Dearborn, Michigan, home, and a felony complaint was filed the following day in the Montmorency County Circuit Court charging him with open murder for the killing of Susan Lindbloom.

At trial, the prosecution's theory of the case was that petitioner and Klecha, who worked with one another, murdered Lindbloom to prevent her from testifying against petitioner in a pending marijuana distribution case that had been brought against petitioner in Montmorency County.  Klecha, who entered into a plea agreement with the prosecution, testified against

-2-

petitioner at trial.[1]  Klecha stated that he and petitioner left the Detroit area for Atlanta,

Michigan, on the evening of Friday, May 14, 1999, and that they traveled to Atlanta planning "to

kill the informant that was going to testify against [petitioner] in the upcoming drug trial, which

was going to start the following weekend."  (Trial Transcripts (TT) Vol. IV, p. 632)  On the ride

up to Atlanta, petitioner showed Klecha a bottle containing a white powder, told Klecha that the

substance was cyanide, and that there was enough cyanide in the bottle to kill several people.

(TT Vol. IV, p. 634)  Petitioner and Klecha spent the night at the home of petitioner's mother.

The following evening, petitioner and Klecha went to Lindbloom's house.  Lindbloom

invited them in, and the three sat at the kitchen table and talked.  Petitioner and Klecha were

drinking beer, and all three of them were ingesting cocaine.  During the course of the

conversation, Lindbloom got up and poured herself a glass of Diet Mountain Dew, and then sat

back down at the table.  (TT Vol. IV, pp. 647-52)  When Lindbloom left the room momentarily,

petitioner removed a bottle containing a mixture of cyanide and water from his belt and poured a

portion of the mixture into Lindbloom's glass.  (TT Vol. IV, p. 654)  When Lindbloom returned,

she took a drink from the glass.  Lindbloom commented that the soda tasted bad and proceeded

to pour the remaining contents of the glass into her kitchen sink.  Lindbloom then poured herself

a glass of Pepsi One.  (TT Vol. IV, pp. 655-56)  Five to ten minutes later, Lindbloom started

feeling ill, left the kitchen again, and went into the bathroom.  Petitioner then poured a portion of

the cyanide solution into the glass containing the Pepsi One.  After returning from the bathroom,

---

[1]Klecha pleaded guilty to second-degree murder and testified against petitioner in
exchange for a sentence of six to fifteen years' imprisonment.

Lindbloom took a drink from the glass.  Shortly thereafter, Lindbloom began vomiting and became incontinent.  (TT Vol. IV, pp. 656-58)

Lindbloom's brother, Mark Corbin, then arrived at Lindbloom's house.  Petitioner introduced himself and Klecha to Corbin as "Steve" and "Mike," respectively.  (TT Vol. IV, p. 659; TT Vol. III, p. 588)  Corbin soon learned that Lindbloom was gravely ill and had been vomiting.  Upon seeing her condition, Corbin directed Lindbloom's son Steele to call 911.  (TT Vol. III, pp. 586-89)  After Steele placed the 911 call, petitioner told Klecha that he needed to move his truck because an ambulance was coming and his truck was in the way.  Klecha went to his truck and started the engine.  Petitioner then got in the truck and stated that they needed to leave Lindbloom's house.  Klecha then drove away.  (TT Vol. IV, pp. 661-62)  After stopping at petitioner' mother's house and at a nearby cabin petitioner owned, petitioner and Klecha returned to Detroit.  During the ride back, petitioner told Klecha that the only way they could get caught was if Klecha snitched on him, and petitioner concocted a false story to give to the police, if necessary, regarding their activities in Atlanta on the day of Lindbloom's death.  (TT Vol. IV, pp. 662-68)

As noted above, the jury found petitioner guilty of first degree murder, and his conviction was affirmed on appeal.  Petitioner now seeks a writ of habeas corpus pursuant to § 2254 on the following grounds:

> I. The trial court erred in admitting certain custodial statements
> that were obtained in violation of petitioner's rights under the Fifth
> Amendment to the United States Constitution.

-4-

II.  The trial court erred in denying petitioner's motion to suppress evidence seized from petitioner's cabin because the affidavit in support of the search warrant did not provide probable cause for the issuance of the warrant and/or certain facts were omitted from the affidavit which, if included, would have led the magistrate to deny the affiant's warrant request.

III.  The trial court erroneously admitted testimony regarding other uncharged misconduct without making the findings required under People v. Vandervliet, 444 Mich. 52, 508 N.W.2d 114 (1993).

IV.  The prosecutor committed misconduct by repeatedly referring to the uncharged misconduct.

V.  The evidence presented at trial was insufficient to establish that petitioner was guilty beyond a reasonable doubt of the charged offense of first-degree murder of a peace officer.

VI.  Petitioner was denied the effective assistance of counsel at trial.

**III.  Standard of Review**

A petition for a writ of habeas corpus is the exclusive federal remedy available to a state prisoner who challenges the constitutionality of his confinement. See 28 U.S.C. § 2254; Prieser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827 (1973).  In order to prevail, the petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A petition for habeas corpus relief may not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court decision is contrary to federal law "when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts." Maldonado v. Wilson, – F.3d –, 2005 WL 1654766 at *4 (6th Cir.)(citing Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495 (2000)). A state court decision is an unreasonable application of federal law "when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner." Id. Where a claim has not been adjudicated on the merits in state court and has not been procedurally defaulted, the court will apply a de novo standard of review. Hill v. Mitchell, 400 F.3d 308, 313 (2005). The state court's findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. Id.

### IV. Petitioner's Claims

### (A) Admission of Statements Made to Arresting Officers

Prior to trial, petitioner filed a motion to suppress certain statements he made to the police upon his arrest.[2] The trial court denied the motion. On direct appeal, petitioner argued

---

[2]Petitioner made statements both during the ride from his house to the police station and at the police station. In his motion to suppress, petitioner was seeking suppression of all statements he made to the police immediately following his arrest. In this matter, petitioner claims only that the statements he made during the ride to the police station were obtained in violation of his Fifth Amendment rights. He does not contend that the statements he made at the police station were obtained improperly.

that the trial court erred in so doing. The Michigan Court of Appeals rejected petitioner's

argument, stating the following:

> First, defendant argues that the trial court erred in refusing to suppress his statements to the police, which defendant alleges were improperly obtained when the police continued to question him after he invoked his right to counsel. We disagree.
>
> In *Edwards v. Arizona*, 451 U.S 477, 484-485; 101 S.Ct. 1880; 68 L.Ed.2d 378 (1981), the Supreme Court held that when an accused invokes the right to counsel during a custodial interrogation, the accused is not subject to further interrogation by the police until counsel has been made available, unless the accused initiates further communication, exchanges, or conversations with the police. The Supreme Court in *Davis v. United States*, 512 U.S. 452; 114 S.Ct. 2350; 129 L.Ed.2d 362 (1994), further clarified that courts must determine whether the accused actually invoked the right to counsel and this constitutes an objective inquiry. *Id* at 458-459. If an accused makes reference to an attorney that is ambiguous or equivocal, in that a reasonable police officer in light of the circumstances would understand only that the accused might be invoking the right to counsel, the cessation of questioning is not required. *Id*. at 459. Thus, "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id*. at 461.
>
> In this case, the police advised defendant of his *Miranda* rights at the time of his arrest and defendant said that he understood those rights. Defendant then asked to call his cousin Jerry. When an officer asked who that was, defendant indicated that Jerry was an attorney. However, when the police told defendant that he would have to wait until arriving at the police post before making such a call, defendant said that he was willing to talk to the officers, as long as he could call Jerry later. Defendant at no time requested an attorney before questioning, either in the van or at the police post. Under these circumstances, defendant never unequivocally invoked his right to counsel. The trial court did not err in refusing to suppress defendant's statements on this basis.

Zamboroski, 2002 WL 31957706 at * 1.

Petitioner contends that the Court of Appeals' adjudication of his claim was contrary to the rule set forth in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880 (1981), as further illuminated in Davis v. U.S., 312 U.S. 452, 114 S.Ct. 2350 (1994).  As the Michigan Court of Appeals noted, in Edwards, the Supreme Court held that the police must immediately cease questioning a suspect who has asserted his right to have counsel present during custodial interrogation.  The Court left open the question of what constitutes a sufficient assertion of the right to counsel to invoke the protections of the rule.  In Davis, the Court answered that question, concluding that the police must cease questioning a suspect only if the suspect voices an unambiguous request to have counsel present.  Thus, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," the police need not cease the interrogation.  Id., 512 U.S. at 459, 114 S.Ct. 2350.

The testimony given at the suppression hearing by the arresting officers, Detectives Tim Lenhard and Bruce Dykehouse of the Michigan State Police, establishes that *Miranda* warnings were read to petitioner immediately upon his arrest and again when he was placed in Detective Lenhard's van for transport to the police station.  After he was placed in the van, a conversation took place between petitioner and the officers in which petitioner expressed a desire to speak to his cousin, whom petitioner identified to the officers as an attorney.  According to petitioner's version of the events, Detective Lenhard then asked him if he was willing to talk, to which petitioner replied, "as long as I can call my attorney first."  See Petitioner's Reply Brief in

-8-

Support of Petitioner for Writ of Habeas Corpus, p. 6.  At that point, again according to petitioner's version of the events, Detective Lenhard stated that petitioner could "call him later" and proceeded to question petitioner about his involvement in the Lindbloom murder.  Petitioner contends that his statements regarding his request to speak to his cousin, an attorney, constituted an unequivocal assertion of his right to counsel and that the Michigan Court of Appeals either ignored or misconstrued the suppression hearing testimony in finding to the contrary.  For the reasons discussed below, the court disagrees.

As an initial matter, there is no record support for petitioner's assertion that he stated to Detective Lenhard that he would talk "as long as I can call my attorney first," which would, in the court's view, constitute an unequivocal assertion of the right to counsel.  Indeed, conspicuous by its absence from petitioner's brief is any citation to testimony in the suppression hearing transcript indicating that he made such a statement.  Detective Dykehouse  testified briefly at the suppression hearing, stating that petitioner never made a request to have an attorney present during questioning in his presence.  (T Vol. 1, p. 173)  The bulk of the testimony surrounding this issue was given by Detective Lenhard.  The material portions of that testimony are set forth below.

> **Prosecutor**:  So then did you, after you made contact with Defendant, did you inform him of his constitutional *Miranda* rights?
>
> **Lenhard**:  I walked over to my van from his pickup truck, which was probably fifty, seventy-five feet on a walk over to my van.  I just verbally, from memory, told him of his *Miranda* warnings.  Once we got into my van, I pulled out my *Miranda* card so I could read it verbatim off the card.

**Prosecutor**:  Did the Defendant understand those rights?

**Lenhard**:  Yes.  He told me he did.

**Prosecutor**:  And what did he tell you about his cousin?

**Lenhard**:  He asked me if he could call his cousin, Jerry.  And I wanted to know who Jerry was.  And he said, well, Jerry's an attorney.  And I said, well, you can call your cousin, Jerry, but let's wait until you get back to the State Police Post and you can make all the calls you want.

...

**Prosecutor**:  Did he say – what did he say about talking to you with regards to his cousin?

**Lenhard**:  He was more than willing to talk to me, he just wanted to know if I would let him call his cousin, I told him I would.

**Prosecutor**:  Did he at any time in your van invoke the right to have counsel present during questioning?

**Lenhard**:  Not in the van, never did he invoke his right for counsel.

(TT Vol. I, pp. 176-78)  On cross-examination, the following exchange took place:

**Counsel**:  Okay.  Am I correct, then, that in your report you state that you sat him the driver's side seat and started to talk to him?

**Lenhard**:  Yes.  That's what is says.

**Counsel**:  And then he asked if he could call his cousin, Jerry, is that correct?

**Lenhard**:  Yes.

**Counsel**:  And then you asked him why?

**Lenhard**:  No.  I asked him who Jerry was.

-10-

**Counsel**:  Okay.  And then he responded that Jerry was an attorney, is that correct?

**Lenhard**:  That's correct.

...

**Counsel**:  And after, then you read him the *Miranda* rights from that card, he then stated, according to your report, that he would talk to you if he could call his cousin later, is that correct?

**Lenhard**:  That's correct, yes.

**Counsel**:  And you responded that he would be allowed to call his cousin upon arrival at the State Police Post?

**Lenhard**:  That's correct.

**Counsel**:  Now, in route from where you arrested Mr. Zamboroski to the police post, did you or any officer that you were with ask Mr. Zamboroski questions?

**Lenhard**:  I'm sure there were questions asked.  My intent was to go to the post and conduct an interview.  Mr. Zamboroski was very verbal.  He wanted to talk.  I would rather do it at the State Police Post where I can take notes.  It's a little difficult driving a car in the city, but he wanted to talk, I was going to talk.  I don't know what questions I asked.  I know I asked him about who was with him.

(TT Vol. I, pp. 183-85)

There is nothing in either Detective Dykehouse's testimony or Detective Lenhard's testimony indicating that petitioner made a clear and unambiguous request to speak to an attorney prior to any questioning.  From this testimony, it appears that petitioner agreed to speak with the officers upon the condition that he be permitted to call his cousin once he reached the police station.  Moreover, according to Lenhard, it was petitioner who initiated the conversation

-11-

in the van while en route to the police station.  In short, the suppression hearing record does not support petitioner's contention that his statements constituted an unequivocal assertion of his right to counsel.[3]  Based on that record, this court cannot say that the Court of Appeals' adjudication of this issue was contrary to, or involved an unreasonable application of Edwards/Davis, or that it was based upon an unreasonable determination of the facts.

Notwithstanding the above, even if the statements petitioner made in the van were obtained in violation of Edwards/Davis and thus should not have been admitted at trial, habeas relief would not be warranted because the admission of those statements did not have "'a substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993)(citation omitted); see also, e.g., Ford v. Curtis, 277 F.3d 806, 809 (6th Cir. 2003)(trial error may form basis for habeas relief only where error had substantial and injurious effect upon jury's verdict).  Detective Lenhard testified at trial as to the statements petitioner made during the ride from his house to the police station:

> **Prosecutor**:  Did he make any statements during the transport from Kendal Street to the Metro South Post?
>
> **Lenhard**:  Mr. Zamboroski wanted to tell me what happened.  He talked, he told me that he was up in Atlanta that May 15th.  I asked

---

[3]Petitioner makes much of the fact that the officers knew that his cousin was an attorney, but, as the Sixth Circuit has noted, "[t]he mere fact that the government is aware that a suspect has an attorney, or is soon to have one, does not unambiguously assert the suspect's right to deal exclusively with the police through counsel during custodial interrogation."  U.S. v. Suarez, 263 F.3d 468, 483 (6th Cir. 2001).  Petitioner also makes much of the fact that he had a cell phone in his possession upon his arrest and was permitted to call his wife en route to the police station, but was not permitted to call his attorney cousin.  However, petitioner has failed to provide any reasonable explanation as to how these facts support his claim that he unequivocally asserted his right to counsel.

> him who he was up there with.  He said it doesn't concern me who
> he was with.  He didn't want to tell me who he was with. We kind
> of went over the whole story that they went up on a Friday night,
> stayed at his cabin, or stayed at his mother's cottage on Crooked
> Lake; that he was at the Sue Lindbloom residence.  Then we go
> back to who he was with and how he got there, and he didn't want
> to talk about that.

(TT Vol. IV, p. 702)  That was the full extent of the testimony presented at trial as to the

statements petitioner made during the van ride to the police station.  Thus, from Lenhard's

testimony regarding the statements petitioner made during the van ride to the police station, the

jury learned that petitioner had admitted the following relevant facts: (1) he was in Atlanta,

Michigan, on the weekend of Lindbloom's death, (2) he traveled to Atlanta with another

individual, and (3) he was at Lindbloom's house on the weekend of the murder.

After Lenhard testified as to the statements petitioner made during the van ride, he gave

testimony regarding the extensive statements petitioner made during the interrogation that took

place at the police station.  According to Lenhard, petitioner recounted, in detail, his activities on

the weekend of Lindbloom's murder.  While petitioner did not admit to having poisoned

Lindbloom, he admitted, among other things, that he was in Atlanta, Michigan, the weekend of

May 15, 1999, that he had traveled there with another individual, subsequently identified as

Klecha, that he knew Lindbloom, and that he was at Lindbloom's house at the time she fell ill.

(TT Vol. IV pp. 702-07)  The statements petitioner made at the police station contained all of the

information he provided in the statements he made during the van ride, plus much greater detail

as to his activities on the weekend of May 15, 1999.  Further, by the time the jury heard

Lenhard's testimony, it was no revelation that petitioner was in Atlanta on the weekend of

-13-

Lindbloom's murder and that he was at her house when the poisoning occurred.  Numerous

witnesses, including Klecha and Lindbloom's son and brother, testified as to such facts before

Lenhard took the stand.  Thus, Lenhard's testimony regarding the statements petitioner made

while en route to the police station was wholly duplicative of other properly admitted testimony.

Under these circumstances, it cannot reasonably be said that the admission of the challenged

statements had "a substantial and injurious effect or influence in determining the jury's verdict."

Brecht, supra, 507 U.S. at 637, 113 S.Ct. 1710 (citation omitted).

### B.  Motion to Suppress

The police executed search warrants at three properties owned by petitioner and/or his

family.  Petitioner filed two pre-trial motions to suppress the evidence seized by the police

during these searches, claiming that the affidavit on which the warrants were based was

insufficient to support a finding of probable cause and that material information was omitted

from the affidavit.  The trial court denied the motions.  In his direct appeal, petitioner contended

that the trial court erred in so doing.  The Court of Appeals rejected petitioner's claim.  Petitioner

contends that the Court of Appeals' determination of his Fourth Amendment claim involved an

unreasonable application of controlling federal law and that habeas relief is therefore warranted.

Respondent argues that review of the claim is barred under the doctrine established in Stone v.

Powell, 428 U.S. 465, 96 S.Ct. 3037 (1976).

In Stone, the Supreme Court held that "where the State has provided an opportunity for

full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas

corpus relief on the ground that evidence obtained in an unconstitutional seizure was introduced

-14-

at his trial." Id., 428 U.S. at 494, 96 S.Ct. 3037.  In Machacek v. Hofbauer, 213 F.3d 947, 952

(6th Cir. 2000), the Sixth Circuit determined that habeas review of a Michigan inmate's claim

regarding the legality of his arrest was barred under the Stone doctrine, stating the following:

> Petitioner's Fourth Amendment claim is not reviewable.  A habeas petitioner may not seek habeas relief on a claim of illegal arrest if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes.  [Stone, supra].  In *Riley v. Gray*, 674 F.2d 52 (6th Cir. 1982), we set forth two distinct inquiries a court must perform when determining whether a petitioner may raise a claim of illegal arrest in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was frustrated because of a failure of that mechanism." Id. at 526.  Because Machacek concedes that Michigan has a procedural mechanism which presents an adequate opportunity to raise his Fourth Amendment claims, he must establish that a failure of that procedural mechanism somehow prevented him from litigating his claims.
>
> In this case, the record reflects that petitioner was able to present his Fourth Amendment claims to the Michigan courts and that these claims were carefully considered and rejected at the trial level and on appeal.  Machacek may be disappointed with his inability to persuade the Michigan courts that his statement was the product of an illegal arrest, but the record clearly shows that he received all the process he was due.  Accordingly, any claims concerning the validity of his arrest are not cognizable on habeas review under the doctrine of *Stone v. Powell*.

This matter is, in all material respects, identical to Machacek.  Petitioner concedes that

the State of Michigan has an adequate procedural mechanism for the presentation of Fourth

Amendment claim, and he has failed to demonstrate that a defect in the procedural mechanism

prevented him from fully litigating his claim.  The trial court held a hearing on petitioner's

motion to suppress, allowed defense counsel a full opportunity to argue the motion and rebut the prosecutor's arguments, and rendered a thorough oral decision denying the motion. Further, the Michigan Court of Appeals carefully considered the trial court's decision on appeal. Petitioner's primary complaint is simply that the Michigan courts, in adjudicating his Fourth Amendment claim, got it wrong. While that may or may not be the true, it is beside the point. The record in this matter "clearly shows that [petitioner] received all the process he was due." Id., 213 F.3d at 952. Accordingly, review of petitioner's Fourth Amendment claim is barred under the Stone doctrine.

### C.  Admission of Other Bad Acts Evidence

Plaintiff's third claim is, quoting from his brief, that "the trial court committed reversible error by admitting testimony regarding other 'uncharged misconduct' without making the required determinations enunciated by the Michigan Supreme Court in *Vandervliet*." This claim arises from the trial court's admission of testimony that petitioner had cocaine and marijuana in his possession when he was arrested in 1998 on the drug charges that arose from Lindbloom's cooperation with the police. The trial court admitted the testimony on the ground that it was relevant to the issue of motive. On direct appeal, petitioner claimed that the evidence should have been excluded because it was not logically relevant to the question of motive and was unduly prejudicial. The Court of Appeals determined that petitioner did not object to the admission of the testimony and thus reviewed the issue for plain error. On plain error review, the Court concluded, as the trial court found, that the evidence was relevant to petitioner's motive and that it was not unduly prejudicial. Zamboroski, 2002 WL 31957706 at *3.

-16-

Respondent contends that petitioner procedurally defaulted the claim by virtue of his failure to object to the offending "other acts" evidence and that relief is not warranted on the merits.

When state court review of a federal claim is barred pursuant to an independent and adequate state procedural rule, review of the claim in a federal habeas corpus proceeding is likewise barred unless the petitioner can demonstrate (1) cause for the default and actual prejudice, or (2) that failure to consider the claim would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991). As, noted above, the Michigan Court of Appeals reviewed petitioner's evidentiary claim under a plain error standard of review based upon his failure to object to the trial court's admission of the other acts evidence. Michigan's contemporaneous objection rule constitutes an independent and adequate state ground sufficient to bar habeas review. See Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000); see also Draper v. Adams, 2000 WL 712376 at *9 (6th Cir.(2000)). Further, the Sixth Circuit has repeatedly held that plain error review by a state appellate court constitutes the enforcement of a procedural default. See, e.g., Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001)("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default."); see also Gulertkin v. Tinnelman-Cooper, 340 F.3d 415, 422-23 (6th Cir. 2003). Thus, the Court of Appeals' review of petitioner's evidentiary claim on the merits under a plain error standard does not constitute a waiver of the procedural default. Petitioner contends, however, that his trial counsel did, in fact, object to the other acts evidence of which he complains and, therefore, that the Court of Appeals erred in reviewing the claim for plain error

-17-

only.  Petitioner thus argues that review of the claim should not be barred on procedural grounds.

The court disagrees with petitioner's interpretation of the record.

The evidence regarding petitioner's possession of drugs at the time of his 1998 arrest was

presented through the testimony of Lieutenant Ken Mills, the unit commander for the Huron

Undercover Narcotics Team (HUNT) of the Michigan State Police.  Mills was called to the stand

to give testimony regarding Lindbloom's arrest on drug charges and her subsequent cooperation

with the police, which resulted in the arrest of petitioner on drug charges.  (TT II, pp. 440-47)

During Mills' testimony, defense counsel stated "Your Honor, I think that we are going far afield

of the question as to Susan Lindbloom."  (TT II, p. 443)  The trial court proceeded to give a

cautionary instruction to the effect that the jury was going to hear testimony about other illegal

acts committed by petitioner and that the jury should consider such testimony only with respect

to the issue of petitioner's motive.  (TT II, p. 43)  Following the trial court's giving of the

cautionary instruction, the prosecutor asked Mills what petitioner had in his possession at the

time of his 1998 arrest, which was effected following a traffic stop.  Mills stated the following:

> Located in the vehicle he was driving was approximately one and
> three quarter pounds of marijuana, just over ten grams of powder
> cocaine, electronic – a digital scale, along with a small hand scale
> and two boxes of forty–five caliber ammunition, along with
> packaging material for the drugs that we did seize.

(TT II, p. 445)  Counsel did not raise any objection to the question or answer.

In arguing that he objected at trial to the admission of this evidence, petitioner relies

upon his attorney's loosely-worded objection that the questioning was getting "far afield of the

question as to Susan Lindbloom."  Given the fact that Mills' testimony regarding the type and

-18-

quantity of drugs petitioner had in his possession at the time of his arrest came *after* counsel lodged the aforementioned objection and the fact that no specific objection was raised to that portion of Mills' testimony, the court agrees with the Court of Appeals' conclusion that plain error review was appropriate based upon petitioner's failure to object.  Petitioner has demonstrated neither cause for, nor prejudice arising from, the default, and he has not shown that a fundamental miscarriage of justice would result if review of the claim on the merits was barred. Accordingly, the court finds that petitioner's evidentiary claim is procedurally barred by virtue of his failure to comply with Michigan's contemporaneous objection rule.

In addition to the above, review of petitioner's evidentiary claim is barred on the ground that he did not present the issue to the Michigan Court of Appeals as one involving federal law. A petitioner must first exhaust his claims in state court before he may seek habeas relief in federal court based upon those claims.  See Stanford v. Parker, 266 F.3d 442, 451 (6th Cir. 2001).  In order to satisfy the exhaustion requirement, he must "fully and fairly present his claim, as a matter of federal law, to [the] state courts."  Id.  Where the petitioner has raised the claim in state court as a matter of state law only, the exhaustion requirement is not satisfied.  Id.  An unexhausted claim may be dismissed without prejudice to permit the petitioner an opportunity to pursue the claim in state court.  Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002).  "However, if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."  Id.  To obtain review of a procedurally defaulted claim, the petitioner must show cause for the default and prejudice arising therefrom,

or that a miscarriage of justice would result in the absence of a review of the claim on the merits.
Id. at 386.

A review of petitioner's state court appellate brief reveals that he raised the evidentiary
issue at hand as a matter of state law only, claiming that the trial court did not apply the proper
test for determining the admissibility of "other acts" evidence, as established in People v.
Vandervliet, 444 Mich. 52, 508 N.W.2d 114 (1993). Petitioner did not cite any provision of the
United States Constitution or any controlling Supreme Court precedent in advancing his claim,
and he did not otherwise cite any law or allege facts giving rise to a federal constitutional issue.
Indeed, petitioner did not so much as refer to his rights to a "fair trial" and "due process,"
phrases which, though generally insufficient, are often included in a brief in an to attempt to
federalize a state law claim. See, e.g., McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir.
2000)("General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly
present' claims that specific constitutional rights were violated"). Accordingly, petitioner did
not "fairly present" his evidentiary claim to the state courts as a matter of federal law, and the
claim is thus unexhausted. At this juncture, review of the claim in state court would undoubtedly
be procedurally barred, necessitating that petitioner make a showing of cause and prejudice, or
that a fundamental miscarriage of justice would occur if the claim was not examined, in order to

-20-

obtain review of the claim on the merits.[4]  As stated above, petitioner has failed to make any

such showing.  Review of the claim is therefore barred.

Even if petitioner's evidentiary claim was not procedurally defaulted, he would not be

entitled to habeas relief thereon.  Generally, a state court evidentiary ruling cannot serve as

grounds for habeas relief unless the ruling violated "some principle of justice so rooted in the

traditions and conscience of our people as to be ranked as fundamental."  Bugh v. Mitchell, 329

F.3d 496, 512 (6th Cir. 2003)(citations omitted).  Petitioner has failed to show that the admission

of evidence regarding his drug possession was erroneous under state law, much less demonstrate

that the error was so egregious as to offend some firmly rooted constitutional principle.

Moreover, even if the evidence was improperly admitted, petitioner cannot credibly claim that

the evidence was so prejudicial as to deprive him of a fundamentally fair trial.  The evidence in

---

[4]A Michigan inmate, such as petitioner, whose direct appeals have been exhausted may
seek relief from his conviction under M.C.R. 6.501 et seq.  However, M.C.R. 6.508(D)(3)
provides that relief may not be granted on any ground that could have been raised on appeal
unless the inmate shows cause for the failure and actual prejudice arising therefrom.  Petitioner,
who raised the "other acts" issue in a pro se brief filed with the Michigan Court of Appeals,
clearly could have presented the issue as one involving federal law at the time of his direct
appeal, and, as discussed above, he has failed to show cause and prejudice.  Thus, review of the
claim would be barred under M.C.R. 6.508(D)(3).

this case was, in the court's view, overwhelming.[5]  Given the weight of the evidence against

defendant, and the other properly admitted evidence of his drug use and involvement in narcotics

sales, the testimony regarding petitioner's possession of drugs on the night of his 1998 arrest

most assuredly had little, if any, effect upon the jury, and certainly not so great of an effect as to

have substantially influenced the verdict.

Based on the foregoing, the court finds that petitioner procedurally defaulted his claim

regarding the admission of other bad acts evidence and that even if review of the claim was not

barred, it is without merit.  Accordingly, petitioner is not entitled to habeas relief on this claim.

**D.  Prosecutorial Misconduct**

Petitioner next contends that the prosecutor committed misconduct by eliciting testimony

from Lt. Mills regarding petitioner's possession of drugs at the time of 1998 arrest.  Further,

petitioner contends that the prosecutor committed misconduct by eliciting testimony from

---

[5]The trial judge shared this court's opinion as to the strength of the evidence against
petitioner, as indicated by the following statement made by the judge at the sentencing hearing
after petitioner proclaimed his innocence:

> Mr. Zamboroski, your statement takes me somewhat aback, but the
> jury has spoken, and I would have to say in my twenty-five plus
> years as a judge I've never heard a case that had more conclusive
> evidence pointing to guilt of the defendant in a case than – than it
> was in your case.
>
> I must say, too, that this is not my first time in my judicial career
> pronouncing the most severe sentence allowed under the laws of
> the State.  I probably could say, and I do say, that I've never
> sentenced anybody to the maximum sentence that's probably been
> more deserving of it than I see that you are.  I have never been an
> avid supported of the death penalty, but, believe, me, if it were
> available to me today I would not hesitate to use it.

(Sentencing Hearing Transcript, pp. 5-6)

-22-

another witness regarding petitioner's use and possession of cocaine and by eliciting testimony from Klecha that petitioner had been to prison on a prior occasion.

In his *pro se* brief to the Michigan Court of Appeals, petitioner referred only to the testimony elicited from Lt. Mills in arguing his claim of prosecutorial misconduct. He did not refer to the testimony of the other witness regarding his possession and use of cocaine or Klecha's testimony regarding his prior prison term. Petitioner has thus impermissibly attempted to expand the scope of his claim on habeas review. Any claims of prosecutorial misconduct arising from the testimony of Klecha or the other witness are unexhausted and are thus not cognizable in this matter absent a showing of cause and prejudice, or that a miscarriage of justice would result if the claims were not reviewed. Coleman, supra, 501 U.S. at 750, 111 S.Ct. 2546. Petitioner has not attempted to make any such showing. Accordingly, the court will limit is review to the issue specifically raised in petitioner's state appellate brief – that the prosecutor committed misconduct by eliciting testimony from Lt. Mills regarding petitioner's possession of drugs at the time of his 1998 arrest.[6]

As with petitioner's claim regarding the trial court's admission of the evidence itself, the Michigan Court of Appeals reviewed petitioner's prosecutorial misconduct claim for plain error. Though it did not expressly state so, it is clear that the Court of Appeals conducted a plain error review due to petitioner's failure to object to the evidence. In light of the fact that the Court of

---

[6]The Michigan Court of Appeals summarily rejected petitioner's prosecutorial misconduct argument: "Furthermore, because the [other acts] evidence was relevant to motive and was not unduly prejudicial under MRE 403, we reject defendant's claim that the prosecutor committed misconduct by introducing it. There was no plain error." Zamboroski, 2002 WL 31957706 at *4.

-23-

Appeals reviewed the claim for plain error only, review of the claim in this matter is procedurally barred absent a showing of cause and prejudice, or that a miscarriage of justice would result if the claim was not reviewed on the merits.  See Hinkle, supra, 271 F.3d 244; Coleman, supra, 501 U.S. at 750, 111 S.Ct. 2546.  Petitioner has not made such a showing. Accordingly, review of petitioner's prosecutorial misconduct claim is barred.

Notwithstanding the above, even if the claim was not barred, petitioner would not be entitled to habeas relief. "On habeas review, claims of prosecutorial misconduct are reviewed deferentially." Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)(citing Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986)).  Habeas relief is warranted only if the prosecutor's conduct was "so flagrant as to render the entire trial fundamentally unfair." Id.

Both the trial court and the Michigan Court of Appeals concluded that the other acts evidence elicited by the prosecutor was admissible as a matter of state law.  Petitioner has not shown that the determinations of these courts were erroneous as a matter of state law.  A prosecutor cannot be deemed to have committed misconduct by eliciting admissible testimony. See, e.g., Stovall v. Cockrell, 2003 WL 21750707 (N.D.Tex 2003)("Prosecutors do not engage in misconduct by presenting admissible evidence for consideration by the trier of fact").  Thus, the prosecutor engaged in no misconduct whatsoever, let alone misconduct that was so improper as to render petitioner's trial fundamentally unfair

### E.  Sufficiency of Evidence

Petitioner next contends that the prosecution failed to present sufficient evidence to establish his guilt beyond a reasonable doubt.  Petitioner insists that he was charged with murder of a "peace officer," M.C.L. 750.316(1)(c), and that his conviction cannot be sustained because

-24-

no evidence was introduced that Lindbloom was a peace officer. This claim is without merit. The complaint, information, and arrest warrant all plainly state that petitioner was charged with "open murder" pursuant to M.C.L. 750.316, and the "Bind Over Transfer Form" indicates that petitioner was bound over for trial on a charge of open murder. Further, the record shows that the trial court instructed the jury on the elements of first degree premeditated murder, M.C.L. 750.316(1)(a), and second degree murder, and that the jury found petitioner guilty of first degree premeditated murder. There is simply nothing in the record indicating that petitioner was charged with or found guilty of murder of a peace officer. Petitioner is not entitled to habeas relief on this claim.

### F.  Ineffective Assistance of Counsel

Petitioner next argues that his attorney provided constitutionally ineffective assistance at trial in that he (1) failed to ensure that the trial court employed the proper test for determining the admissibility of other bad acts evidence, (2) failed to investigate Lindbloom's involvement with the police, (3) failed to obtain the criminal records of the prosecution's witnesses, and (4) failed to object to petitioner being charged with murder of a peace officer. For the reasons stated below, the court finds these claims to be lacking in merit and further finds that petitioner is not entitled to an evidentiary hearing on these claim.[7]

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the right to "the Assistance of counsel for his defence." U.S. Const. amend. VI. As the Supreme Court has recognized, a defendant is entitled not merely to the assistance of

---

[7]Petitioner filed a motion for an evidentiary hearing on his ineffective assistance of counsel claims. The court entered an order denying the motion without prejudice pending further review of the habeas petition.

-25-

counsel, but to the *effective* assistance of counsel.  McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14 (1970)("[T]he right to counsel is the right to the effective assistance of counsel").  A petitioner claiming that he was denied the right to the effective assistance of counsel must demonstrate (1) that his attorney's performance was deficient, and (2) that he suffered prejudice as a result of his attorney's deficient performance.  Strickland v Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  With respect to the first prong of this two-part test, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id.  As to the second prong of the test, the petitioner bears the burden of establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., 466 U.S. at 694, 104 S.Ct. at 2068.  In reviewing a claim of ineffective assistance of counsel, the court must "indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance[.]" Id., 466 U.S. at 689, 104 S.Ct. at 2065.  As the Supreme Court stated in Strickland:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted).

-26-

Petitioner presented his ineffective assistance claim to the Michigan Court of Appeals in a *pro se* brief. The Court of Appeals, applying the <u>Strickland</u> standard, rejected the claim, stating the following:

> Finally, defendant argues that he was denied the effective assistance of counsel. Because defendant did not raise this issue in a motion for new trial or evidentiary hearing in the trial court, our review of this issue is limited to mistakes apparent on the record.
> ...
> Defendant first argues that counsel erred in failing to raise a MRE 404(b) objection to evidence that he had drugs in his possession at the time of his October 31, 1998 arrest. However, as previously discussed, this evidence was admissible under MRE 404(b). Accordingly, counsel was not ineffective for failing to object.
>
> Next, defendant contends that counsel was ineffective for failing to seek records to corroborate a police officer's claim that the victim was scheduled to be a witness in criminal matters pending against defendant. Contrary to what defendant argues, there was other evidence, apart from the police officer's testimony, that the victim was an informant and scheduled to testify against defendant. Specifically, the prosecutor entered a certified copy of the notice of defendant's preliminary examination for the two drug charges he faced, which was scheduled to be held shortly after the date of the victim's death. Moreover, it is not apparent from the record that counsel failed to further investigate the situation concerning the victim's activities with the police. We also reject defendant's claim that motive was established by hearsay evidence, to which counsel failed to object. Mills' testimony that the victim was an informant who was scheduled to testify against defendant did not involve an out-of-court statement and, accordingly, was not hearsay. MRE 801©.
>
> Next, defendant argues that counsel failed to discover and use the criminal records of prosecution witnesses for purposes of impeachment. Our review of this issue is precluded, however, because the factual predicate for defendant's claim is not apparent from the record.
>
> Finally, because the record does not indicate that defendant was charged with the murder of a peace officer, we reject defendant's

-27-

> claim that counsel was ineffective for not challenging the
> sufficiency of the evidence for that offense.
>
> Defendant has not sustained his claim of ineffective assistance of
> counsel.

Zamboroski, 2002 WL 31957706 at *5 (citations omitted).

Petitioner's first and fourth ineffective assistance claims may be dealt with summarily. The court has already addressed the trial court's admission of evidence showing that petitioner had drugs in his possession at the time of his 1998 arrest.  As discussed above, petitioner has not shown that the evidence was admitted improperly as a matter of state law and, even if counsel erred in the manner alleged, petitioner has not demonstrated that he suffered prejudice as a result of the admission of that evidence.  Further, petitioner's claim that he was charged with and found guilty of murder of a peace officer is plainly lacking in merit.  Any allegation of ineffective assistance based upon that claim is likewise lacking in merit.

Turning to petitioner's second ineffective assistance claim, petitioner contends that counsel failed to investigate the prosecution's theory of motive – that petitioner killed Lindbloom to prevent her testifying against him in pending drug case – and that counsel was thus unable to challenge the prosecution's theory at trial.  Petitioner, who was represented on appeal by a State Appellate Defender Office attorney, filed a *pro se* motion with the Michigan Court of Appeals requesting that the matter be remanded to the state court for a hearing on his claims of ineffective assistance pursuant to People v. Ginther, 390 Mich. 436, 212 N.W.2d 922 (Mich. 1973).  The court clerk returned the motion to petitioner pursuant to its policy of refusing to accept *pro se* motions filed by defendants who are represented by counsel, and petitioner's appellate attorney refused to re-file the motion based upon his belief that petitioner's ineffective

-28-

assistance claims lacked merit.[8]  The state court record thus does not shed any light on the question of whether counsel adequately investigated the prosecution's motive theory.  However, even if counsel failed to conduct an adequate investigation, plaintiff is not entitled to habeas relief on this claim because he has not even argued, let alone shown, that further investigation would have yielded evidence favorable to the defense and that a reasonable possibility exists that the result of the trial might have been different if counsel had investigated further.  The nearest petitioner has come to providing an explanation as to the prejudice he suffered as a result of counsel's alleged error is that it allowed the prosecution to establish motive solely through the hearsay testimony of Lt. Mills.  The link between the prosecution's use of Lt. Mills' testimony to establish motive and counsel's alleged error is murky at best.  In any event, as the Michigan Court of Appeals pointed out, Lt. Mills testimony regarding Lindbloom's cooperation with the police and the fact that she was going to testify against petitioner was not hearsay.  Thus, the premise of petitioner's claim of prejudice is flawed.  Petitioner has otherwise failed to make even a *prima facie* showing of prejudice with respect to this claim.

Plaintiff's final allegation of ineffective assistance is that several prosecution witnesses, identified by petitioner as Andrew Godin, Brandy Gardner, Tina Teets, Susan House, Frank Androl, and Mark Corbin, had criminal records and that counsel failed to obtain those records, thus preventing him from impeaching the witnesses by their prior convictions.  Petitioner concedes that he has no evidence to support his assertion that each of these witnesses has a

---

[8]In a letter dated April 19, 2001, petitioner's appellate attorney wrote a letter to petitioner regarding his motion for a <u>Ginther</u> hearing.  Counsel advised petitioner that "[t]he reason I am not going to refile the [<u>Ginther</u>] motion under my name, rather than yours, is the same reason I did not include that issue in my brief: namely that I do not believe the issue has any arguable merit or chance for success."

criminal record, and, even if petitioner's assertion is true, he has not indicated whether their

records include offenses that may be used for impeachment purposes under Mich. R. Evid. 609.[9]

Thus, petitioner's claim, as presented, is based upon nothing more than sheer speculation.

Moreover, even if each of these witnesses was subject to impeachment under Rule 609,

petitioner has failed to demonstrate a reasonable possibility that the outcome of the trial might

have been different if counsel had obtained the witnesses' records and used them at trial.  The

prosecution's case certainly did not hinge on the testimony of any these witnesses.  Androl, who

---

[9]Mich. R. Evid. 609 provides, in part:
**(a) General Rule**.  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

> (1) the crime contained an element of dishonesty or false statement, or

> (2) the crime contained an element of theft, and

>> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

>> (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

...
**(c) Time Limit**.  Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.

ran a fruit market in Atlanta, Michigan, merely testified that Lindbloom and her son Steele shopped at his fruit market on the afternoon of May 15, 1999, the date of Lindbloom's death, and that Lindbloom appeared to be in a "normal" mood.  (TT Vol. III, 548-52)  Corbin, who was Lindbloom's brother, testified that he arrived at Lindbloom's house on May 15, 1999, shortly after Lindbloom fell ill and that petitioner and another individual (Klecha) were at the house when he arrived.  Thus, Corbin's testimony placed petitioner at the scene of the murder. However, there was ample evidence in the record aside of Corbin's testimony, including petitioner's own statements, establishing that petitioner was present at Lindbloom's house when she became ill due to the cyanide poisoning, and Corbin's testimony was otherwise of marginal significance.  The court can safely say that there is no possibility that impeachment of Corbin and/or Androl by a prior conviction would have resulted in a different verdict.

Each of the other four witnesses, Godin, Gardner, Teets, and House, all of whom were acquaintances of both petitioner and Lindbloom, testified as to conversations they had with petitioner in which he either gave his opinion or sought to elicit information as to who had "narced" on him with respect to the drug charges he was facing.  Godin testified that petitioner stated that he thought it was Lindbloom who had done so.  Godin further testified that petitioner stated with respect to Lindbloom that "one of these days her day is coming, or something in regards to that, along that line."  (TT III, pp. 488-89)  This testimony bolstered the prosecution's theory of motive and was thus not wholly inconsequential.  However, the evidence in this case, even absent the testimony of these witnesses, was overwhelming.  The testimony of Klecha was, by itself, sufficient to establish all of the requisite elements of first-degree murder.  In addition to Klecha's testimony, petitioner gave a statement to the police that corroborated, and thus

-31-

bolstered, Klecha's testimony as to he and petitioner's activities on the weekend of Lindbloom's death. The cause of death was established as poisoning by means of potassium cyanide. The prosecution presented evidence that petitioner purchased a drum of potassium cyanide from a Westland, Michigan chemical distributor shortly before Lindbloom's death. Petitioner's fingerprints were found on the glass from which Lindbloom was drinking when she ingested the cyanide. Not only did Klecha witness petitioner place the cyanide in the glass, but Lindbloom's son Steele also testified that from another room in the house, he "had seen [petitioner] putting stuff in my mom's drink." (TT III, p. 576-77) With respect to the question of motive, Lt. Mills testified that Lindbloom had been working with his HUNT unit as an informant and that she was scheduled to testify against petitioner in an upcoming proceeding. Klecha also provided testimony regarding motive, stating that prior to arriving in Atlanta on the weekend of Lindbloom's death, petitioner had identified three individuals, one of whom was Lindbloom, who he thought might be the informant and that he intended to kill the informant in the hope that the informant's death would necessitate that the drug charges against him be dismissed. Given the weight of the evidence against petitioner, it cannot be said that there is reasonable possibility that the result of the proceeding would have been different if counsel had impeached Godin, Gardner, Teets, and House with prior convictions. The court finds petitioner's final claim of ineffective assistance of counsel to be without merit.

For reasons which have been touched upon above, the court further finds that an evidentiary hearing is not warranted on petitioner's claims of ineffective assistance of counsel.[10]

---

[10]Petitioner filed a motion for an evidentiary hearing on his ineffective assistance claims. The court entered an order denying the motion without prejudice pending further review of the habeas petition.

-32-

The initial question is determining whether to hold an evidentiary hearing in a habeas proceeding is whether, in fact, such a proceeding is barred under 28 U.S.C. § 2254(e)(2).  Under § 2254(e)(2), a court, with certain exceptions not relevant here, may not hold an evidentiary hearing in a habeas case if "the applicant has failed to develop the factual basis of a claim in State court proceedings."  Petitioner filed a motion for <u>Ginther</u> hearing, as stated above.  The Michigan Court of Appeals returned the motion to him, and his appellate attorney refused to re-file the motion, albeit for good cause.  Petitioner attempted to develop the factual basis of his ineffective assistance claims, but was prevented from doing so. Accordingly, a hearing is not barred under 28 U.S.C. § 2254(e)(2).  <u>See</u> <u>McFarland v. Yukins</u>, 356 F.3d 688, 712 (6th Cir. 2004).  However, the fact that a hearing is not barred does not mean that petitioner is automatically entitled to one.  As the Sixth Circuit stated in <u>Stanford v. Parker</u>, 266 F.3d 442, 459-60 (6th Cir. 2001)(citations omitted):

> Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petitioner "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit. Even in a death penalty case, "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require and evidentiary hearing."

For the reasons stated above, the record clearly establishes that petitioner is not entitled to relief on his ineffective assistance of counsel claims.  Even if petitioner was able to establish that counsel erred in the manner alleged, he has not shown that a hearing might reveal facts or evidence sufficient to establish that he suffered prejudice as a result of the alleged errors.  His

claims are based upon nothing more than "bald assertions and conclusory allegations." Id.

Accordingly, though an evidentiary hearing is not barred in this matter, neither is one warranted.

## V.  Conclusion

For the reasons stated herein, the court recommends that petitioner's request for a writ of habeas corpus be **DENIED** and that this matter be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


                                        s/Virginia M. Morgan
                                        VIRGINIA M. MORGAN
Dated:   September 9, 2005               UNITED STATES MAGISTRATE JUDGE


Copies sent by U. S. Mail and/or electronic means this date to:
David Zamboroski and William Campbell

-34-